Argued May 22, reversed June 28, 1974

DINNOCENZO, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND (No. 397-236), *Appellant.*

523 P2d 1280

*Jim G. Russell,* Assistant Attorney General, Salem,
argued the cause for appellant. With him on the brief
were Lee Johnson, Attorney General, and W. Michael
Gillette, Solicitor General, Salem.

*Bernard Jolles,* Portland, argued the cause for
respondent. With him on the brief were Franklin,
Bennett, Ofelt & Jolles, P. C., Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

The State Accident Insurance Fund appeals from a circuit court judgment which allowed claimant's aggravation claim. The circuit court judgment reversed orders of both the hearing officer and the Workmen's Compensation Board which denied the aggravation claim.

Claimant sustained two compensable injuries within a few days of each other in 1971: She suffered a neck injury on May 28, 1971, and a contusion of the lumbosacral area on June 3, 1971. These claims were accepted with determination orders which allowed unscheduled permanent partial disability awards of 16 degrees each for neck and low back disability. Claimant requested a hearing to litigate the extent of disability, and a hearing was held on May 31, 1972. Following the hearing, the hearing officer affirmed the awards in an opinion and order dated August 31, 1972. Claimant appealed to the Workmen's Compensation Board, which raised the award to 32 degrees for each injury, a total of 64 degrees. No appeal was taken from that order.

On March 5, 1973, claimant filed aggravation claims in the two cases. Attached to the request for hearing were two letters to claimant's attorney from Dr. R. E. Rinehart. The first letter, dated October 23, 1972, reads as follows:

"Dear Mr. Jolles:
"Mrs. Dinnocenzo was seen and examined here on 13 October 1972. Copies of other physicians['] reports which you so kindly provided have been re-

viewed. Copies of my history, physical examination and laboratory studies are enclosed. In view of many normal X-ray reports relating to her spine no films of that area were taken. A chest x-ray was normal. High gain electromyography showed findings compatible with reflex tension and spasm. Significant findings are as follows:

"1. A history of three injuries within a relatively short period of time.

"2. Return to work after each injury before symptoms had subsided.

"3. Gradually increasing musculoskeletal complaints, (lameness, soreness, weakness, muscle spasm, weakness and fatigue).

"4. Subsequent development of visceral (nausea) and emotional (depression) complaints.

"5. Repeated examinations disclosing only evidence of soft-tissue (muscle) injury.

"6. Failure to improve with ordinary medical and physical forms of therapy.

"7. Physical findings referrable only to disturbances in the musculoskeletal and visceral nervous systems. The former manifested by tender, nodular muscles, some of which are limited in range of motion. The latter manifested by dilated pupils and rapid pulse.

"8. Normal laboratory and x-ray studies on several occassions [sic].

"9. Electromyographic findings compatible with muscle spasm and reflex tightening.

"Mrs. Dinnocenzo presents a classical symptom complex which is poorly understood by a majority of the medical profession. In my opinion it is best called 'post-traumatic musculoskeletal syndrome'. It is also labeled 'whiplash', 'myositis', 'sprain', 'strain', 'myositis, myofascitis', etc.

"Typically there is an initial soft-tissue (muscle) injury which does not appear serious in itself. At the time of injury there is damage to muscle and other tissue which requires repair (inflammation,

or -itis). This inflammation is painful and results in muscle activity to brace or immobilize the injured part. If this bracing is continued for any length of time, and particularly if it is accentuated by forced activity, it can become 'reflex' or habitual. Once a habit pattern has been established the bracing leads to fatigue, followed by spasm (cramping) of muscle. Cramping results in further damage and a viscious [sic] cycle is established.

"Secondary processes ensue. The tightened and/or cramped muscle stimulates proprioceptive nerve endings in muscle sending signals to central nervous system and brain. These signals first affect. hypothalamic control centers for the visceral nervous system, accounting for Mrs. Dinnocenzo's rapid pulse and moist extremities. They later affect a portion of the brain known as the limbic system, which controls mood and feeling-tone, accounting for her depression.

"Treatment consists of measures to relieve fatigue, weakness, spasm and reflex tension. These measures consist of rest, exercise, physical measures for relief of spasm, and training in conditioned reflex control of habitual tightening. These procedures have been instituted.

"Without treatment it is doubtful that Mrs. Dinnocenzo would ever attain significant relief. With treatment there is an excellent (90%) chance that function will be restored.

"It is my opinion that she is presently totally disabled and will remain so for perhaps a year. It is my further opinion that her disability is in all probability a result of the injuries she received.

"Sincerely,
"R. E. Rinehart, M. D"

The second letter, dated January 25, 1973, reads as follows:

"Dear Mr. Jolles:

"Please refer to my communication dated 23 October 1972 regarding above. She has been unable to

get in for therapy with any regularity (not at all past two months) because of inability to afford a baby-sitter. Actually she should have half time help five days per week to provide sufficient rest for her treatment program.

"She continues to have low back distress which she describes as 'spasm' and pain. This pain is present constantly and aggravated by any activity, even sitting for any length of time. She also describes severe intermittent cramping of right leg and toe muscles. She reports that she is four to five months pregnant.

"Examination reveals tender hard back muscles throughout.

"Her condition is deteriorating because of lack of definitive treatment. Pregnancy has added another load to her system. Unless adequate treatment can be arranged she can well develop permanent total disability.

> "Sincerely,
> "/s/ R. E. Rinehart /mh
> "R. E. Rinehart, M. D."

ORS 656.271 (1) (1971) sets out jurisdictional requirements by which a claimant may apply for increased compensation for aggravation:

"If subsequent to the last award or arrangement of compensation there has been an aggravation of the disability resulting from a compensable injury, the injured workman is entitled to increased compensation including medical services based upon such aggravation. The claim for aggravation must be supported by a written opinion from a physician that there are reasonable grounds for the claim. In its discretion, the board may order the payment for such medical opinion by claimant or the State Accident Insurance Fund or the direct responsibility employer."

The initial question to be answered is whether the letters from Dr. Rinehart to claimant's attorney

satisfy the requirement of ORS 656.271 (1) (1971). In *McKinney v. G. L. Pine, Inc.,* 16 Or App 619, 622, 519 P2d 1265 (1974), we interpreted that requirement:

"In order to satisfy the statutory requirement, the physician's opinion must indicate that there are reasonable grounds for the claim that the disability has been aggravated subsequent to the last award or arrangement of compensation. *Collins v. States Veneer, Inc.,* 14 Or App 114, 512 P2d 1006 (1973). The physician's opinion may either simply state that there has been such an aggravation, *Hamilton v. SAIF,* 11 Or App 344, 501 P2d 1007, *rev den* (1973), or it may set forth facts which, if true, would constitute reasonable grounds for the claim. *Larson v. Compensation Department,* 251 Or 478, 445 P2d 486 (1968)."

The initial hearing on these claims was held on May 31, 1972 and the hearing was closed on August 9, 1972 upon receipt of claimant's letter of August 7, 1972. The hearing officer's award of compensation was dated August 31, 1972. In order to support an aggravation claim, the physician's letters would have had to set forth his conclusion that there was an aggravation or that there was a reasonable basis for believing that claimant's condition had worsened between August 31, 1972 and October 23, 1972. *McKinney v. G. L. Pine, Inc.,* supra; *Collins v. States Veneer, Inc.,* supra. These reports do not indicate a worsening of condition since the last award of compensation. It is a reasonable interpretation of Dr. Rinehart's reports that he concludes that the doctors who examined Mrs. Dinnocenzo for the hearing of May 31-August 9, 1972 were in error in their evaluation of her injury.[1] His letters do not state that there has been an ag-

---

[1] "[Claimant] presents a classical syndrome complex which is poorly understood by a majority of the medical profession. * * *"

gravation of her original injuries subsequent to the last award, nor do they set forth facts which, if true, would constitute a claim for aggravation. This is because Dr. Rinehart specifies no identifiable time as to the onset of the disability which he describes her as having.

Unless medical opinions are confined to an appropriate and identifiable time period, neither the employer nor the Workmen's Compensation Board is assured that the aggravation claim is not simply an attempt to relitigate the issue of the extent of initial disability. The letters submitted in support of the aggravation claim did not confer jurisdiction upon the Workmen's Compensation Board.

Reversed.