Argued and submitted April 11, affirmed August 29, 1984

In the Matter of the Compensation
of Margaret Maarefi, Claimant.

MAAREFI,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(82-00194; CA A29581)

686 P2d 1055

William H. Skalak, Milwaukie, argued and cause and filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant appeals from a decision of the Workers' Compensation Board that affirmed the referee's award of five percent unscheduled permanent partial disability and found that she had become medically stationary by October 16, 1981. Claimant also appeals the Board's determination that she did not file a valid aggravation claim after her claim was closed. We affirm.

Claimant was injured January 27, 1981, when she slipped and fell while working as a beautician. She went home that day but returned to work the next day and worked for a week and a half before seeing her family physician, Dr. Stevens, who approved her seeing a chiropractor. The chiropractor, Dr. Erdman, diagnosed her condition as a lumbar sprain with radiculitis and paravertebral muscle spasm and cervical strain with accompanying headache. Claimant was then referred by Dr. Stevens to an orthopedic surgeon, Dr. Vigeland, who diagnosed her condition similarly and treated her until March, 1981. In March, Dr. Vigeland indicated that she probably would have no permanent impairment and suggested that she return in two to three weeks for consideration of closure. He then released her to return to work. On March 23, 1981, she resumed part-time work.

In July she was evaluated for the employer by Dr. Pasquesi, whose opinion was that she had reached a stationary stage but that she had an impairment equivalent to five percent of a whole person and should avoid repetitive bending, stooping and lifting. Dr. Stevens then referred claimant to Dr. Miller, a neurosurgeon, who reported in July, 1981, that he could find no neurological abnormalities. After seeing claimant for several months, Dr. Miller reported on October 19 that she was medically stationary, that she suffered from cervical and lumbosacral strain and that physiotherapy was no longer needed. The Evaluation Division of the Workers' Compensation Department declared claimant medically stationary as of October 16, 1981, and closed her claim by Determination Order on November 12, 1981, with no award for permanent partial disability.

Claimant had indicated to Dr. Miller her unhappiness with his conclusions, and in December, 1981, she began seeing Dr. Berovic, a chiropractor, on the advice of a friend at

work. Shortly thereafter, on January 7, 1982, claimant initiated the procedure for review of the Determination Order by requesting a hearing. In an Opinion and Order dated December 29, 1982, the referee approved the closure of her claim but found that she had suffered some residual impairment and awarded her five percent unscheduled permanent partial disability. The Board affirmed.

■     Claimant's first assignment of error is that the evidence demonstrates a significantly greater impairment than is reflected in the five percent unscheduled permanent partial disability award. *De novo* review of the record convinces us that that assignment is not well taken.

■     Claimant's second and third assignments of error are that her claim was improperly closed by the November 12, 1981, Determination Order and that the Workers' Compensation Board should have ruled that Dr. Berovic's letters and reports between January 18, 1982, and August 2, 1982, raised a valid claim of aggravation, justifying the reopening of her claim. She relies on Dr. Berovic's letters and reports to support both assignments of error. We conclude that those letters and reports fail to establish either that claimant was not medically stationary at the time her claim was closed or a valid aggravation claim.

■     The term "medically stationary" is defined in ORS 656.005(17):

> "Medically stationary means that no further material improvement would reasonably be expected from medical treatment, or the passage of time."

Although Dr. Berovic's letter of August 2, 1982, states that "I do not feel Ms. Maarefi was medically stationary in December, 1981," we conclude that the Evaluation Division had sufficient evidence to close the claim effective October 16, 1981, and that the Division's determination that she had become medically stationary was borne out by the later development of claimant's condition. The sense in which Dr. Berovic used the term "medically stationary" differs from the sense used by the statute. Dr. Berovic's meaning is suggested by the statement in his letter of May 19, 1982, that "the patient in my opinion would be unable to continue working as a hairdresser without treatment" and by the statement in his letter of April 29, 1982,

that "[a]s a result of her occupational activity, the patient has experienced remissions and exacerbations of symptoms since beginning treatment with me." By "medically stationary," Dr. Berovic apparently means either a lack of variation in one's medical condition or a lack of need for any continuing medical treatment.

Neither meaning is consistent with the statute. The statutory definition is that "no further material improvement would reasonably be expected from medical treatment or the passage of time." ORS 656.005(17). One whose medical condition fluctuates may still be medically stationary in this sense. Moreover, ORS 656.245 requires the inference that one who has been declared permanently disabled in any degree can be medically stationary within the meaning of ORS 656.005(17) and still require continuing treatment:

"[T]he insurer or self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. * * * The duty to provide such services continues for the life of the worker."

Claimant is entitled under ORS 656.245 to full compensation for the cost of the treatments she needs to keep working. *Wait v. Montgomery Ward, Inc.,* 10 Or App 333, 338, 499 P2d 1340, *rev den* (1972).

Dr. Berovic's letters and reports do indicate that claimant's condition fluctuated after her claim was closed. His letters also indicate, and we accept, that claimant requires continuing chiropractic treatments and that her condition improved to some extent after her claim was closed.[1] However, that her condition improved does not establish that as of October 16, 1981, "no further material improvement would reasonably be expected" in that condition. Dr. Berovic's description of claimant's condition is not materially different from that described in Dr. Miller's letter of October 19, 1981.

---

[1] According to his letter of August 2, 1982, his opinion that claimant was not medically stationary in December, 1981, was based "on the patient's physical position on initial examination and [her] objective improvement substantiated by reexaminations up to June 30, 1982. * * * We have steadily seen a resolution of abnormal findings and presently have only a positive leg raise."

Both doctors noted claimant's complaints of pain and muscle spasms in her neck and low back, and both doctors noted her inability to flex her back fully without pain in the midportion of her low back. Claimant was working the same number of hours per week on June 30, 1982, that she worked on October 16, 1981, and Dr. Berovic does not indicate that claimant's ability to withstand the conditions of her job had either worsened or improved.

■　Dr. Berovic's failure to assert that claimant's condition worsened after her claim was closed and his assertion that instead claimant's condition had improved require us to reject claimant's argument that Dr. Berovic's letters and reports raised a valid claim of aggravation justifying the reopening of her claim.[2] Claimant reads ORS 656.273(3) in isolation from the rest of the section and claims that the statute does not require a statement by a physician that the claimant's condition has worsened, but need only indicate "a need for further medical services or additional compensation * * *." Claimant ignores the more general description of a claim for aggravation in ORS 656.273:

"(1)　After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury.

"* * * * *

"(3)　A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation."

■■　Previous opinions of this court have frequently noted the requirement that a claimant prove a worsened condition to support a claim for aggravation. *See, e.g., Trevino v. SAIF*, 66 Or App 410, 673 P2d 1389 (1984); *Wetzel v. Goodwin Brothers*, 50 Or App 101, 622 P2d 750 (1981); *Anderson v. West Union Village Square*, 44 Or App 685, 607 P2d 196 (1980); *Dinnocenzo v. SAIF*, 18 Or App 63, 523 P2d 1280 (1974). Dr. Berovic's July 15, 1982, report does indicate that "she will likely have exacerbations of symptoms in the future." If

---

[2] The possibility that claimant's condition worsened between the closure of her claim and her first visit to Dr. Berovic is negated by her testimony that her medical condition on December 15, 1981, was essentially identical to her condition on October 16, 1981.

claimant's symptoms do "exacerbate," she may be entitled to have her claim reopened under ORS 656.273 or to additional medical services under ORS 656.245. That "she will likely have exacerbation of symptoms in the future," however, does not state a present worsening requiring further medical service or additional compensation and, therefore, is not a claim for aggravation.

Affirmed.