Argued and submitted May 12, affirmed and remanded to board for determination of
extent of permanent disability October 29, 1986

In the Matter of the Compensation of
Lona L. Emery, Claimant.

**EMERY,**
*Petitioner,*

*v.*

**ADJUSTCO et al,**
*Respondents.*

(WCB 84-03674; CA A36960)

727 P2d 622

Edward J. Harri, Albany, argued the cause for petitioner. On the brief were J. David Kryger, and Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

Craig A. Staples, Portland, argued the cause for respondents. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Claimant petitions for review of an order of the Workers' Compensation Board, claiming that the Board erred in (1) reinstating determination orders of March 14, 1984, and April 3, 1984; (2) denying her aggravation claim; (3) denying additional temporary disability benefits; and (4) denying penalties and attorney fees. In addition, she requests a remand to the referee for a determination of the extent of permanent disability.

On October 5, 1982, claimant was injured while employed as a laborer on a food processing production line at Stayton Canning Company. She suffered a shoulder strain and experienced bilateral arm and shoulder pain and hand numbness. Her physician, Dr. Lawton, treated her conservatively and authorized her return to light work on November 18, 1982. She did not return to work because of continuing pain and sought the services of another physician, Dr. Tiley, who began treating her on March 2, 1983. On June 27, 1983, after ordering myelography, he stated that claimant was "free to pursue any occupational endeavors she desires." On August 26, 1983, he reported that claimant had reached a stable plateau and recommended closure of her claim. However, he also recommended that another orthopedist perform a closing evaluation.

That evaluation was done by Dr. Duff. On December 13, 1983, Duff diagnosed her condition as degenerative disc disease exacerbated by work activities. He recommended neurosurgical evaluation, because it had been previously recommended and never performed and also because claimant felt that her medical work-up was incomplete. He believed that little could be accomplished by further treatment but would not consider claimant medically stationary until the neurosurgical evaluation had occurred.

Because she continued to suffer pain which did not permit her to return to her previous occupations, claimant opened a clothing consignment store in November, 1983. She initially worked there four days per week but, because of the recommendations of her doctors and her continuing discomfort, eventually cut back to three days per week. She worked that schedule through the date of the hearing.

Dr. Collada, a neurosurgeon, next evaluated claimant. On January 12, 1984, he diagnosed her condition as chronic cervical strain syndrome and concluded that her subjective complaints overrode the objective findings. He recommended further diagnostic studies and authorized time-loss benefits. On January 16, 1984, Duff released claimant for modified work.

Claimant was next examined by Dr. Rosenbaum, a neurosurgeon, on referral from Adjustco. On January 23, 1984, he diagnosed a chronic cervical strain and unrelated mild degenerative arthritis of the cervical spine, concluded that she was medically stationary and had reached maximum improvement and recommended closing her claim. He believed that she could return to her previous occupation without significant limitations. On January 30, 1984, Tiley authorized time-loss benefits, beginning January 3, 1984.

On February 21, 1984, claimant changed her attending physician to a chiropractor, Dr. Boyer. On February 22, 1984, Collada indicated that claimant was medically stationary but would experience waxing and waning of symptoms. On March 7, 1984, Boyer diagnosed a chronic moderate cervical strain and noted that claimant had suffered a flare-up in symptomatology. He initiated chiropractic adjustment and physical therapy and recommended that this course of treatment continue for 30 days, at which time he would reevaluate her.

On March 14, 1984, a determination order issued. On March 15, 1984, Boyer's March 7, 1984, report was received by Adjustco. In response to a petition for reconsideration by claimant, ORS 656.268(4), a second determination order issued on April 3, 1984. That order slightly amended the first order by granting temporary total disability benefits less time worked from October 6, 1982, to November 17, 1982, temporary partial disability benefits from November 18, 1982, to December 21, 1982, temporary total disability benefits from April 26, 1983, to June 26, 1983, and temporary total disability benefits from January 3, 1984, to January 23, 1984. It determined that claimant was medically stationary as of February 22, 1984.

On April 4, 1984, Boyer again concluded that claimant was not medically stationary. On referral from Boyer, Dr.

Altrocchi, a neurologist, examined her and, in a May 7, 1984, report, diagnosed her condition as chronic muscular neck pain. He did not consider her to be medically stationary. On May 15, 1984, claimant sent a copy of Altrocchi's report to Adjustco. On May 24, 1984, claimant again sent the May 7, 1984, report to Adjustco and also specifically requested, by copy of a May 24, 1984, letter to the Board, that her claim be reopened. On July 10, 1984, Boyer again examined claimant and noted general improvement in her condition. On July 20, 1984, Adjustco, noting that "the information now on file does not support a reopening of your claim," denied claimant's aggravation claim.

■     Before we can decide whether the Evaluation Division properly found claimant medically stationary as of February 22, 1984, we must determine whether we may consider the medical reports of Boyer. Adjustco asserts that they must be excluded, because none of his reports were received by the employer or Evaluation Division before the issuance of the March 14, 1984, determination order. In support of that position Adjustco cites several of our decisions.[1] They do not support that proposition. We conclude that the relevant date is April 3, 1984—when the second order issued—rather than March 14, 1984. Adjustco received Boyer's March 7 report well before the second determination order issued and had a duty to forward it to the division. ORS 656.268(2); *Brown v. Jeld-Wen, Inc., supra* n 1. In *Brown,* the attending physician had directed medical reports to the employer before closure, which apparently were not forwarded to the division. We were convinced, in part by the reports, that there had been a premature closure. As in *Brown,* the pre-order report is part of the record for our consideration. ORS 656.268(2); *Brown v. Jeld-Wen, Inc., supra* n 1, 52 Or App at 194 n 1.

Before a claim may be closed, the claimant must be "medically stationary," ORS 656.268, which "means that no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17). In this case, the referee held that the claim had

---

[1] *Martin v. SAIF,* 77 Or App 640, 713 P2d 1083, *rev den* 301 Or 240 (1986); *Alvarez v. GAB Business Services,* 72 Or App 524, 696 P2d 1131 (1985); *Maarefi v. SAIF,* 69 Or App 527, 686 P2d 1055 (1984); *Brown v. Jeld-Wen, Inc.,* 52 Or App 191, 627 P2d 1291 (1981).

been prematurely closed. On review, the Board reversed. We affirm.

■    The preponderance of the medical evidence indicates that claimant was medically stationary on February 22, 1984. Apart from the specific opinions of Tiley, Rosenbaum and Collada that she was medically stationary, the record is replete with indications that, although she was suffering pain and would experience waxing and waning of symptoms, continued medical treatment could produce little benefit. Boyer's report does not contradict these conclusions. To the contrary, he initiated treatment on a short-term trial basis and indicated that he would evaluate the efficacy of treatment in 30 days. Thus, his report does not indicate that he "expected" "material improvement" but merely that he was hopeful of improvement. ORS 656.005(17). All the examining physicians agreed that claimant was suffering physical problems. However, the preponderance of the evidence indicates that "no further material improvement would reasonably be expected" from treatment or the passage of time.

■    We also believe that claimant failed to prove an aggravation. To establish a compensable aggravation under ORS 656.273, a claimant must demonstrate that, since claim closure, "his symptoms have increased or * * * that his underlying condition has worsened, resulting in a loss of earning capacity." *Smith v. SAIF*, 302 Or 396, 730 P2d 30 (1986). Claimant's own testimony indicates that she worked three full days per week from before the date of closure through the date of the hearing, September 27, 1984. Thus, she failed to prove that she experienced any loss in earning capacity after closure.

■■    The Board's denial of time loss benefits from June 27, 1983, to January 3, 1984, is affirmed. Time loss benefits ordinarily continue until a claimant returns to work, is released by her doctor to return to work or has been found medically stationary. ORS 656.268; *Austin v. Consolidated Freightways,* 74 Or App 680, 704 P2d 525, *rev den* 300 Or 332 (1985); *Jackson v. SAIF,* 7 Or App 109, 490 P2d 507 (1971). On June 22, 1983, Tiley, then claimant's treating physician, released her to return to regular duties. Therefore, denial of time loss benefits was correct.

■    The next issue is whether claimant is entitled to interim compensation from May 16 or May 25, 1984, until

July 20, 1984. On May 16 she forwarded a copy of Altrocchi's May 7 report. On May 24 she formally requested a reopening. This request was received by Adjustco on May 25. It was not until July 20, 1984, that Adjustco refused to reopen the claim. On an aggravation claim, the insurer is obligated to begin paying compensation not later than the 14th day after notice of a "medically verified inability to work resulting from the worsened condition." ORS 656.273(6). The claim must be accepted or denied within 60 days. ORS 656.263(6). As we understand Adjustco's argument, it asserts that Altrocchi's report fails to satisfy the statutory requirement of a medically verified inability to work resulting from a worsened condition, ORS 656.273(6), and so it need not have paid compensation within 14 days of receipt of that letter. We agree. Altrocchi never stated that claimant was unable to work. We also agree that his report did not constitute an aggravation claim, because it did not indicate "a need for further medical services or additional compensation." ORS 656.273(3). However, claimant's May 24 request for reopening was an aggravation claim. ORS 656.273(2); *Stevens v. Champion International,* 44 Or App 587, 606 P2d 674 (1980). Adjustco was obligated to accept or deny the claim within 60 days, ORS 656.263(6), and it did so. The claim was properly denied.

■ The next issue is whether claimant is entitled to penalties and attorney fees for Adjustco's refusal to reopen or to pay interim compensation. The evidence indicates a reasonable doubt as to whether claimant was entitled to compensation; thus the denials were not unreasonable. Accordingly, penalties and fees were properly denied.

■ The final issue is whether remand to the Board, or to the Hearings Division, is appropriate for a determination of permanent partial disability. Although the issue of permanent disability was raised by claimant at the hearing, the referee properly did not rule on it, having found a premature closure. *See Kociemba v. SAIF,* 63 Or App 557, 665 P2d 375 (1983). On appeal, the Board reversed the referee on the issue of premature closure but failed to make findings as to the extent of permanent disability. We believe it appropriate to remand this issue to the Board. ORS 656.295(5), (6).

Affirmed and remanded to the Board for determination of the extent of permanent disability.