Argued and submitted October 22, 1980, affirmed as modified January 19, 1981

In the Matter of the Compensation of
Samuel M. Wetzel, Claimant,

WETZEL,
*Petitioner - Cross-Respondent,*
*v.*
GOODWIN BROTHERS,
*Respondent - Cross-Petitioner.*

(WCB No. 79-3386, CA 17613)

622 P2d 750

Rolf Olson, Salem, argued the cause for petitioner - cross-respondent. On the briefs were David W. Hittle, and Olson, Hittle, Gardner & Evans, Salem.

Elizabeth K. Reeve, Portland, argued the cause for respondent - cross-petitioner. With her on the briefs were Lawrance L. Paulson, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

This proceeding is the latest in a series of workers' compensation claims dating from April 23, 1973, when claimant suffered a back strain while driving a truck for defendant. The first determination order, awarding claimant temporary total disability payments, was issued October 26, 1973. After three re-openings of the case, with hearings and appeals, claimant was awarded 60 percent unscheduled permanent partial disability on October 27, 1978. This appeal requires us to decide whether a report by the claimant's doctor, received by the insurer on October 26, 1978, was a sufficient claim for aggravation under ORS 656.273(3) to require reopening of the claim. We hold that it was not.

On April 17, 1979, claimant requested a hearing on insurer's denial of payments for chiropractic care from December 4, 1978, through March 23, 1979, and later amended this request to include the denial of the aggravation claim, penalties and attorney fees. The referee awarded payment for chiropractic treatments and a 10 percent penalty to claimant for the insurer's unreasonable refusal to pay for the treatments; reopened the aggravation claim and awarded compensation and a 10 percent penalty on all time loss from October 26, 1978; and awarded claimant $1,000 attorney fees. The Board affirmed the referee as to the chiropractic care, but reversed as to the aggravation claim and reduced the award of attorney fees to $500. Claimant appeals the denial of the aggravation claim and reduction of attorney fees. Respondent cross-appeals the award of payments for chiropractic care.

There is a dispute in this case as to what law applies to the aggravation claim. The aggravation statute in effect in April, 1973, when claimant was first injured, provided that

"If subsequent to the last award or arrangement of compensation there has been an aggravation of the disability resulting from a compensable injury, the injured workman is entitled to increased compensation including medical services based upon such aggravation. The claim for aggravation must be supported by a written opinion from a physician that there are reasonable grounds for a claim." Former ORS 656.271(1), Oregon Laws 1965, ch 285 § 32.

In 1975, the statute was amended to provide in ORS 656.273(1) and (3) that

"(1) After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury.

"* * * * *

"(3) A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation.

"* * * * * *."

We find that regardless of which statute applies, there was no aggravation claim filed in this case.

Claimant's doctor's report was simply a chart note, apparently sent to the insurer and/or employer routinely. It recommended that the claimant be enrolled for treatment in a pain center. Claimant himself admits that this note was in response to a phone call from the insurer. This request for further medical services was thus not necessarily based on any determination by the doctor that the condition was worsening. In fact, included on the same page as the October 19 chart note is a statement by the doctor, dated September 21, that the claimant's condition "is not changing." We said in *Dinnocenzo v. SAIF,* 18 Or App 63, 523 P2d 1280 (1974),

"* * * In order to support an aggravation claim, the physician's letters would have had to set forth his conclusion that there was an aggravation or that there was a reasonable basis for believing that claimant's condition had worsened * * *." 18 Or App at 68.

■ That case was decided under the statute in effect at the time of claimant's first injury. If that statute is applicable to this case, claimant has not established a claim for aggravation because the doctor's letter was clearly inadequate to meet the requirement set out in *Dinnocenzo v. SAIF, supra.* Further, we do not interpret the present statute as providing a claim for aggravation under the facts of this case. In *Hewes v. SAIF,* 36 Or App 91, 583 P2d 576 (1978), we held that a letter summarizing the results of the claimant's medical examination and a conclusion that claimant experienced an aggravated condition, constituted a claim for aggravation under the statute. The letter stated:

"I would request that this lady's claim be reopened for further study. I would like to obtain neurological consultation for her and myelogram to determine whether or not she has a herniated invertebral disc at this time. I believe she has an aggravation to her previous condition."

We also said in *Anderson v. West Union Village Square,* 43 Or App 295, 602 P2d 1092 (1979), 44 Or App 685, 607 P2d 196 (1980), that

"A physician's report recommending reopening for worsened conditions constitutes a claim for aggravation. * * *" at 687.

However, here the recommendation that claimant be enrolled at the pain center for treatment was initiated by the insurer, not claimant. Moreover, the doctor's note indicating claimant's condition "is not changing" is not only directly contradictory to an aggravated condition, but it is contrary to the kind of language we have previously held would constitute a claim for aggravation. Thus the physician's report in this case did not operate as a claim for aggravation.

■ In addition, we conclude that neither claimant nor his attorney filed a claim for aggravation. It appears from the record that no claim for aggravation was raised until July 2, 1979, when claimant amended his April 17, 1979, request for a hearing to include the "de facto denial of aggravation claim 10/78" as well as entitlement to disability benefits, penalties and attorney fees. Both ORS 656.273(4) and the statute it replaced, ORS 656.271(2) (Oregon Laws 1965, ch 285 § 32), require a claim for aggravation to be filed within five years after the first determination order. Even if the amendment of the hearing request was otherwise sufficient to raise the issue, it was not accomplished within the required time period.

Claimant testified that on September 22, 1978, he telephoned the insurer and spoke to the claims manager, telling him he wanted "to reopen my claim, and my back was worse. He assured me that this would be taken care of." Claimant testified he heard nothing further from the carrier and took no additional action until January or February of 1979, when he called Northwest Pain Center to find out why he had not been accepted for treatment.

Claimant's telephone call cannot be said to be "filing a claim for aggravation." The word "claim" has been defined since the major revision in the Workers' Compensation Law in 1965 as

> "[a] *written* request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(7). (Emphasis supplied.)

It is not disputed that neither claimant nor his attorney filed a written request for a reopening due to aggravation, and there is no evidence that the employer had notice or knowledge of any worsening of the injury. In summary, we find there was no claim for aggravation filed by claimant, his attorney or his physician, and affirm the Board's ruling denying the aggravation claim, and the payments and penalties awarded therewith.

■ Despite claimant's failure to establish an aggravation claim, he is entitled to prevail on his alternative claim that the physician's report indicated medical services were required after a determination of permanent disability, which the employer was obligated to provide under ORS 656.245(1).[1] The fact that a claimant has not suffered an aggravation of his previous injury does not mean that he is not entitled to further medical services. *Bowser v. Evans Product Company,* 270 Or 841, 843, 530 P2d 44 (1974). In *Amlin v. Edward Hines Lumber Co.,* 35 Or App 691, 582 P2d 54 (1978), we said the statute's five-year limitation related solely to claims for increased compensation for aggravation. The employer has not disputed that the claimant is entitled to these services and stated that it was "ready, willing and able" to provide any necessary medical treatment related to claimant's injuries.

---

[1] Neither the Board nor the referee considered this claim. ORS 656.245(1) provides:

> "(1) For every compensable injury, the direct responsibility employer or the State Accident Insurance Fund shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services."

■　The only related issue remaining is whether claimant is entitled to penalties for the carrier's failure to arrange such treatments, or whether he is entitled to temporary total disability from the time the treatment was recommended until it is completed.

Claimant was already receiving payments for permanent partial disability. There is no evidence he was totally disabled while awaiting this treatment, and, in fact, Dr. Poulson, then his treating physician, stated in a chart note in May or June of 1979, that claimant "claims he does about two hours of work around the dairy. He says he keeps the machinery going and does some welding. I would assume that he is doing more than two hours a day of that type of work. I think he is probably capable of it." Claimant maintains he is entitled to penalties because "[t]he carrier should have made arrangements for the claimant to be enrolled in the pain center in October, 1978." ORS 656.262(8) provides:

"(8)   If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

"Compensation" is defined at ORS 656.005(9) as follows:

"(9)   'Compensation' includes all benefits, including medical services, provided for a compensable injury to a subject worker or the worker's beneficiaries by a direct responsibility employer or the State Accident Insurance Fund pursuant to this chapter."

Claimant does not specify any particular action the carrier or employer failed to take, but it is clear Dr. Fax, claimant's primary treating physician, first recommended referral to a pain center for treatment in a letter to the carrier on October 3, 1978, apparently in response to a request from the insurer to do so. The chart note of October 19, 1978, again recommended such treatment to the insurer and employer, as did a letter of February 5, 1979. Dr. Poulson, the second orthopedic surgeon from whom claimant sought treatment, recommended this treatment in letters to the Northwest Pain Center and the insurer on July 12, 1979.

The pain center immediately advised claimant by letters of July 27 and August 1, 1979, that they were placing him on a waiting list for treatment and awaiting authorization for treatment from his insurance carrier.

The insurer concedes that "claimant is entitled to medical treatment pursuant to ORS 656.245." Considering that concession and the numerous communications, we conclude the insurer did unreasonably delay in authorizing the services and we assess a 10 percent penalty for the period of time from October 3, 1978 until the authorization actually occurred.

■        As. to claimant's second assignment of error, the reduction in attorney fees, the Board's order is affirmed. Claimant is entitled to attorney fees for prevailing on the payment for chiropractic treatments, and the award was properly reduced for his failure to prevail on the aggravation issue.

■ ■        On insurer's cross-appeal from the Board's order requiring payment for chiropractic treatments, we affirm. The insurer contends payment for the treatments was not required because Dr. Fax did not authorize or recommend chiropractic treatments. However, Dr. Moore, the chiropractor and apparently the original treating physician, who recommended claimant to Dr. Fax, testified that the treatments were necessarily and reasonably performed in the continued treatment of a compensable injury. The referee and the Board apparently relied on claimant's testimony that the chiropractic treatments temporarily alleviated his pain and made it possible for him to function. Medical expenses for purely palliative purposes are recoverable where they are necessarily and reasonably incurred in the treatment of an injury for which permanent partial disabillity has been awarded. *Wait v. Montgomery Ward, Inc.,* 10 Or App 333, 338, 499 P2d 1340, *rev den* (1972).

In summary, the Board's order is modified to award claimant payment for the medical services requested and the payment of penalties. The order is affirmed in all other respects.

Affirmed as modified.