Argued and submitted October 24, 1984, resubmitted In Banc February 6, reversed and remanded March 20, reconsideration denied May 10, petition for review denied June 18, 1985 (299 Or 313)

In the Matter of the Compensation of
Geraldine A. Haret, Claimant.

HARET,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(82-05250; CA A31047)

697 P2d 201

Charles Robinowitz, Portland, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

BUTTLER, J.

Gillette, J., concurring in part; dissenting in part.

## BUTTLER, J.

The issues in this workers' compensation case are whether claimant made an aggravation claim before June 11, 1982—the latest date when she and SAIF, after the hearing, agree that it had been made—and whether her condition had worsened by the time of the claim. We hold that claimant's physician's report of December 4, 1981, constituted an aggravation claim and that her condition had, in fact, worsened. We therefore reverse the Board's denial of compensation for the period before June 11, 1982, and its denial of penalties and attorney fees for SAIF's unreasonable delay in denying the claim. However, we affirm the conclusion of the referee and the Board that claimant is not entitled to interest at the statutory rate on unpaid compensation from the time that it became due under ORS 82.010(2)(a).

Claimant was injured in 1978 when her hair caught in rollers at work, causing a severe wrenching of her neck. She became medically stationary after 10 months of treatment but continued to experience pain. At that time, her symptoms were primarily in her neck, but she also had some problems in her right arm. Dr. Grimm, her attending neurosurgeon, stated that her injuries included an acute stretch injury to her cervical nerves. He believed that her right arm problems were primarily the result of that stretch injury. The referee, in an opinion entered after a hearing in October, 1979, found that claimant had suffered a cervical sprain with arm symptoms but that she had no loss of function in her upper right arm. He awarded her 25 percent unscheduled permanent partial disability, based on loss of function of the cervical spine alone.

Claimant continued to have occasional flareups of her neck problem, but she did not need to see a physician from December, 1980, until December 4, 1981, when she went to Dr. Nash, a neurosurgeon.[1] His report to SAIF of that date emphasized the difficulties that claimant was having with her right arm and suggested that her C5-6 nerve root was involved. A myelogram in February, 1982, confirmed his suspicion.[2] Nash did not suggest surgery. He made a number

---

[1] Grimm had moved to another city. Nash was in the same office, but he had not previously seen claimant.

[2] A myelogram in August, 1978, soon after claimant's injury, showed a normal cervical area.

of reports to SAIF while he treated claimant and summarized his findings in a letter to her attorney on May 7, 1982. SAIF received a copy of the letter on May 26, 1982. Meanwhile, on May 10, 1982, SAIF had issued a denial of claimant's aggravation claim. The record reveals no "claim" other than Nash's reports.

Claimant apparently was not satisfied with Nash's conservative approach. On June 11, 1982, she went to Dr. Berkeley, another neurosurgeon. He performed another myelogram and reached a conclusion similar to Nash's, except that he recommended surgery. The parties now agree that Berkeley's June 11, 1982, report to SAIF was an aggravation claim and that claimant's condition had worsened. The period in dispute is from December 4, 1981, through June 10, 1982.

■   We must first determine whether any one of Nash's reports constituted an aggravation claim. If one of them did, we must then decide whether there was a worsening of claimant's condition before she first saw Nash.

ORS 656.273(3) provides:

> "A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation."

That statute replaced *former* ORS 656.271(1) (*repealed by* Or Laws 1973, ch 620, § 4), which provided that an aggravation claim "must be supported by a written opinion from a physician that there are reasonable grounds for a claim." The purposes of the statutory change were to make the physician's report itself the claim and to delete any requirement that the report do more than request additional services. When the carrier receives such a report, it then becomes its responsibility to determine whether a worsening has occurred and to accept or deny the aggravation claim.[3]

■   Even with the statutory change, not every medical report is an aggravation claim. We held in *Wetzel v. Goodwin Brothers*, 50 Or App 101, 622 P2d 750 (1981), that a medical chart note sent to the insurer at its request did not constitute

---

[3] Of course, if a carrier denies the aggravation claim, it will still be responsible for medical costs necessary to treat the claimant's compensable condition. ORS 656.245(1).

an aggravation claim. The note included a statement that the claimant's condition "is not changing." Almost anything more than that, however, can be an aggravation claim. The physician's report need not "adduce facts sufficient to show an aggravation; it need only show the need for further treatment of the injury." *Clark v. SAIF,* 50 Or App 139, 143, 622 P2d 759 (1981). Nash's report, dated December 4, 1981, meets the requirements. Claimant had not seen a physician for a year before going to Nash. Nash's report to SAIF indicated a "need for further medical services" and put SAIF on notice that it had to determine whether a worsening had occurred.[4]

■ Claimant's condition had in fact worsened before she first saw Nash. What was originally a strained but otherwise neurologically normal cervical area had progressed to significant nerve root degeneration. According to Berkeley, the condition that Nash observed in December was significantly different from that on which the referee based his order, precisely because of that progression. The nerve root involvement made the situation much more serious and created risks of further degeneration, including atrophy of the muscles of claimant's right arm. Claimant has proved a worsening as of December 4, 1981. SAIF's denial of her claim was both late and unreasonable.

The final issue is whether claimant is entitled to interest on the temporary total disability compensation she received after the hearing as the result of SAIF's agreement to accept her aggravation claim as of June 11, 1982, and on the additional amount of temporary total disability compensation she will receive as a result of our decision. We decided this question adversely to claimant in *Button v. SAIF,* 45 Or App 295, 608 P2d 206, *rev den* 289 Or 107 (1980), where we held that the claimant was not entitled to interest because "[t]here is no statutory authority for such an award in the Workers' Compensation Act. The only *penalties* available are those specified in [ORS 656.262(10)]." 45 Or App at 298. (Emphasis supplied.)

■ Although our quoted statement in *Button* may have

---

[4] SAIF must ultimately have realized that Nash's reports constituted an aggravation claim. There is no other explanation for its denial issued May 10, 1982, before it had received any written communication from claimant or her lawyer and when the only documents in its file were Nash's reports and related papers.

oversimplified the issue by suggesting that interest is a penalty, our ultimate conclusion was correct. Interest is not a penalty; it is "compensation for the use or forbearance of another's money." *Portland Gen. Elec. Co. v. Dept. of Rev.*, 7 OTR 444 (1978). When applicable, an award of interest avoids the unjust enrichment of a debtor who retains the use of money that it should rightfully have paid to its creditor. The question is whether the general law stated in ORS 82.010(2)(a), which provides that interest at the statutory rate is payable on "[a]ll moneys after they become due" is applicable to compensation payable under the Workers' Compensation Law.

■ We conclude, as we did in *Button,* that it is not. Workers' Compensation is strictly a creature of statute, replacing a worker's common law remedies for job-related injuries. The act provides the exclusive remedy[5] for a worker injured on the job, ORS 656.018, and compensation is payable without regard to the fault of the employer or the worker. ORS 656.005(8)(a). Claims are processed exclusively through the statutory agency, the Workers' Compensation Department, the Hearings Division and the Board, with judicial review in this court, all within the confines of the provisions of the act. The act is a complete statement of the rights of workers to compensation for injuries covered thereby.

The act specifically provides for the consequences that follow from an insurer's or self-insured employer's unreasonable delay or unreasonable refusal to pay compensation. ORS 656.262(10) provides for a penalty "up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382." There is no provision for interest. When it is considered that other provisions of the act permit a worker to keep money paid to him or her, even though it is ultimately determined that the worker was not entitled to the compensation, ORS 656.313(1) and (2), it seems clear that the act strikes a balance of sorts.

To the extent that there are permissible adjustments for over-compensation under the act, ORS 656.268(4), for

---

[5] The injured worker may maintain an action for damages against a *noncomplying* employer for a job-related injury, ORS 656.020, and also for injuries caused by the negligence of a third person not in the same employ. ORS 656.154; *see also* ORS 656.578.

example, we have held that the statutory remedy is exclusive, even if it amounts to no remedy for the overpayment. In *SAIF v. Harris,* 66 Or App 165, 672 P2d 1384 (1983), we held that the insurer could not maintain a court action to recover an overpayment, even though an action for money had and received would have provided a remedy if the overpayment had not been made under the act. It seems clear that "normal remedies" to which a litigant might otherwise be entitled do not apply to litigants covered by the act.

■     Without cataloguing other examples of the exclusivity of the statutory rights and remedies, enough has been said to demonstrate that the Workers' Compensation Law is a complete statement of the parties' rights and obligations, and they are *sui generis.* The consequences for underpayment or nonpayment of compensation are just as limited as they are for overpayment. Either the act provides for them, or there are none. The act does not provide for interest on late payments; it provides for a penalty and attorney fees. Those are the exclusive consequences.[6]

Reversed and remanded with instructions to accept the aggravation claim as of December 4, 1981, and for a determination of penalties and attorney fees.

**GILLETTE, J,** concurring in part, dissenting in part.

I agree with the majority's treatment of when claimant made an aggravation claim and therefore concur in that part of the majority opinion. I disagree with the majority's analysis of the key issue in this case is whether claimant is entitled to interest on the temporary total disability compensation she received after the hearing as the result of SAIF's agreement to accept her aggravation claim as of June 11, 1982, and on the additional amount of temporary total disability compensation she will receive as a result of our decision. I therefore dissent on that issue. We decided this question adversely to claimant in *Button v. SAIF,* 45 Or App 295, 608 P2d 206, *rev den* 289 Or 107 (1980), where we held that the claimant was not entitled to interest because "[t]here is no

---

[6] Although not dispositive of the question, it is worth noting that the Supreme Court denied review in *Button,* and two legislative sessions since *Button* was decided have done nothing to change the conclusion we reached.

statutory authority for such an award in the Workers' Compensation Act. The only *penalties* available are those specified in ORS 656.262[(10)]." 45 Or App at 298. (Emphasis supplied.) We today reconsider our position and determine that *Button* oversimplified the issue.

As the majority acknowledges, our quoted statement in *Button* misconstrued the nature of interest and the statutory basis for awarding it. Interest is not a penalty. Rather, it is "compensation for the use or forbearance of another's money." *Portland Gen. Elec. Co. v. Dept. of Rev.,* 7 OTR 444, 445 (1978). An award of interest avoids the unjust enrichment of a debtor who retains the use of money that it should rightfully have paid to its creditor. We were mistaken, in *Button,* when we passed off requested interest as an unauthorized "penalty."

The question remains, however, as to whether *Button* was legally correct, although its rationale was not. There is no statutory provision within the Workers' Compensation law authorizing or requiring the payment of interest. The only interest provision arguably relevant is found outside the statutory scheme. ORS 82.010(2)(a) provides that interest at the statutory rate is payable on "[a]ll moneys after they become due * * *." Interim compensation pending acceptance or rejection of a claim, and temporary or permanent total disability payments after acceptance, are due and payable at specific times and in readily calculable amounts. *See* ORS 656.206(2), 656.210(1), 656.262(4), 656.273(6). It may be argued that the situation is thus the same as that in *Papadopoulos v. Bd. of Higher Educ.,* 48 Or App 739, 744-46, 617 P2d 931, *rev den* 290 Or 727, *cert den* 454 US 803 (1981), in which the plaintiff was awarded unpaid salary for a school year. We held that he was also entitled to statutory interest on each month's salary from the date during that school year on which it should have been paid. Workers' compensation payments are payable in the same regular fashion; it is easy to argue by analogy that such payments are governed by the general provision for interest on moneys that are due and owing.

It may be argued with equal plausibility, however, that interest should not be awarded, because (a) the Workers' Compensation law is a complete statutory scheme, so that

inclusion of penalties but not interest should be read as indicating legislative intent; and (b) the legislature in its two sessions since *Button* has not seen fit to change the rule we announced there.

On balance, I am persuaded by the former argument. Although the question is not an easy one, I perceive the penalty provisions of ORS 656.262(10) as additions to, not substitutes for, a litigant's normal remedies. I cannot believe that, given the remedial purposes of the Workers' Compensation law, the legislature would substitute penalties, whose award in a given case is problematical, for the just payment for use of a litigant's money that an award of interest is supposed to represent.

I respectfully dissent from the failure to award claimant interest.