Argued and submitted January 10, affirmed April 9, reconsideration denied June 6, petition for review allowed July 29, 1986 (301 Or 445)

In the Matter of the Compensation of
Gavin L. Smith, Claimant.

**SMITH,**
*Petitioner,*

*v.*

**STATE ACCIDENT INSURANCE FUND
CORPORATION et al,**
*Respondents.*

(WCB 83-04541; CA A36412)

717 P2d 218

Edward J. Harri, Albany, argued the cause for petitioner. On the brief were J. David Kryger, and Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant seeks review of a Workers' Compensation Board order reversing a referee's order which allowed claimant's aggravation claim and dismissing the claim as untimely filed. The issues are (1) whether the claim was timely filed, and (2) if so, whether claimant proved a worsening of his compensable condition. ORS 656.273(1). We hold that the claim was timely filed but that claimant·failed to prove a worsening. We therefore affirm.

On March 10, 1977, claimant suffered a compensable low back injury. The claim was closed by a determination order on September 27, 1977. Claimant continued to work until May, 1978, when he quit, because he felt that he could no longer work; he has not worked since.[1] Claimant requested a hearing on the claim closure. On May 6, 1980, the referee awarded 70 percent unscheduled permanent partial disability. The Board reduced the award to 50 percent; we reinstated the referee's award. *Smith v. SAIF,* 51 Or App 833, 627 P2d 495 (1981).

Claimant continued to have problems after the hearing. On April 16, 1980, he saw Dr. Clibborn, complaining of severe low back pain and burning pain in both legs. Clibborn treated claimant at least through April 26, 1982, sending periodic progress reports to SAIF. On July 17, 1981, claimant saw Dr. Stanley, complaining of knee and low back pain. On February 14, 1982, Stanley examined claimant for pain in his left hip and on March 5, for right elbow and shoulder pain.[2] Stanley also sent progress reports to SAIF. Dr. Tsai examined claimant in October, 1979 and in March, 1983. He concluded that there had been a deterioration of claimant's condition during that interval. Dr. Norton reviewed the medical reports and disagreed with Tsai's conclusion.

SAIF denied the aggravation claim. The referee set

---

[1] In 1979, employer offered claimant a "light duty" job within the limitations specified by his physicians. Claimant refused the offer, because "he is hardly able to negotiate himself around the home," "he could accomplish [the job] activities only on good days," his wife had to help him dress and his legs gave way occasionally.

[2] At the hearing, claimant's attorney stated:

"[T]o make this simple in regard to the shoulder and elbow, * * * claimant has no contention that that's caused from his low back, and so that's not an issue * * *."

aside the denial and found that claimant had proved an aggravation. The Board reversed, deciding that the claim was not timely filed within the period provided by ORS 656.273(4).

■ The first issue is whether claimant filed his claim before his aggravation rights had expired. ORS 656.273(4)(a) provides, with two exceptions not relevant here, that an aggravation claim "must be filed within five years after the first determination made under ORS 656.268(4)." The first determination was made on September 27, 1977. Claimant did not file a written aggravation claim. He relies on several doctors' reports that were sent to SAIF before September 27, 1982. The Board decided that none of those reports was sufficient to constitute an aggravation claim. We disagree.

In *Haret v. SAIF*, 72 Or App 668, 671-72, 697 P2d 201, *rev den* 299 Or 313 (1985), we stated:

"ORS 656.273(3) provides:

" 'A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation.'

"That statute replaced *former* ORS 656.271(1) (*repealed by* Or Laws 1973, ch 620, § 4), which provided that an aggravation claim 'must be supported by a written opinion from a physician that there are reasonable grounds for a claim.' The purposes of the statutory change were to make the physician's report itself the claim and *to delete any requirement that the report do more than request additional services.* When the carrier receives such a report, it then becomes its responsibility to determine whether a worsening has occurred and to accept or deny the aggravation claim.

"Even with the statutory change, not every medical report is an aggravation claim. We held in *Wetzel v. Goodwin Brothers,* 50 Or App 101, 622 P2d 750 (1981), that a medical chart note sent to the insurer at its request did not constitute an aggravation claim. The note included a statement that the claimant's condition 'is not changing.' Almost anything more than that, however, can be an aggravation claim. The physician's report need not 'adduce facts sufficient to show an aggravation; *it need only show the need for further treatment of the injury.' Clark v. SAIF,* 50 Or App 139, 143, 622 P2d 759 (1981)." (Emphasis supplied; footnote omitted.)

Each of the doctors' reports indicated a need for further

treatment.[3] The claim was timely filed.[4]

[3] For example, on August 13, 1980, Clibborn wrote to SAIF:

"This patient is not the usual case. As you know he has been disabled since March 10, 1977.

"He first came in to our office on April 16, 1980. He complained of severe pain in his low back with burning pain into both of his legs.

"The patient's improvement has been slow but steady. We will get him down to two (2) visits a month as soon as we can. He should be at that level within two (2) months."

On April 13, 1981, Clibborn wrote:

"This patient has required regular care during the past year due to a deterioration in his low [back] condition, which produced severe pain in his low back. He is much better off at this point. Our treatment from this point on should be considered palliative only. He should be able to get by now with 2-3 visits per month * * *." .

On April 22, 1982, Stanley reported:

"[Patient] returns. He has had increased back pain. This is essentially similar to what he had previously. This is another bad episode.

"EXAMINATION is the same as it was previously. I think it is just recurrence of his back pain. * * * If he does not improve might consider bringing him in for some P[hysical] T[herapy] and some pelvic traction."

[4] The Board stated:

"Claimant argues that ORS 656.273(3) requires only a 'physician's report indicating a need for further medical services or additional compensation' to be statutorily sufficient to make a claim for aggravation. This argument overlooks the inter-relationship of ORS 656.273(3) and ORS 656.245. This inter-relationship has been explained in *Evans v. SAIF,* 62 Or App 182, [660 P2d 185] (1983); *Dwayne G. Cary,* 36 Van Natta 265 (1984); and *William A. Newell,* 35 Van Natta 629 (1983) and we find nothing in this case to cause us to depart from the reasoning in those cases. *Cf. Haret v. SAIF,* 72 Or App 668, [697 P2d 201] (1985) (not every medical report is an aggravation claim, but almost anything that indicates a worsening of the condition would be enough); *Gerald I. Halle,* 37 Van Natta [515] (May 7, 1985) (aggravation claim is made when there is a request for further medical services due to a worsened condition). A claim for medical services within the aggravation period does not present an aggravation claim requiring reopening unless there is something about the claim that makes it clear that the medical services are needed to treat a worsened condition that is related to a compensable injury."

Even under the Board's analysis, at least one of the doctors' reports was sufficient to constitute a timely claim for aggravation. On April 26, 1982, Clibborn wrote to SAIF:

"*As you probably realize, this patient had a worsening of his back pain in September of 1981.* Since that time, he has had pain in his low back with tension in his upper back and neck.

"*These problems began after his March, 1977 injury.* Although this man is permanently disabled, we feel his present treatments are necessary to minimize his present pain.

"Our treatments are not corrective relating to his low back, but they are

■        In order to establish an aggravation claim, claimant must show "worsened conditions resulting from the original injury." ORS 656.273. "Worsened conditions" means a change in condition which makes a claimant more disabled, either temporarily or permanently, than he was when the original claim was closed. *See Stepp v. SAIF,* 78 Or App 438, 717 P2d 216 (1986); *Miller v. SAIF,* 78 Or App 158, 714 P2d 1105 (1986). At this point, we reiterate a fundamental principle of workers' compensation law: Because compensation for an unscheduled disability is awarded for loss of earning power, *see* ORS 656.206(1)(a); 656.210; 656.212; 656.214(5), *more disabled* means less able to work.

At the time of the last award of compensation, in May, 1980, claimant suffered from sharp pain in the low back and both legs; that finding was also reported by Tsai in March, 1983. In 1980 and in 1983, his pain was increased by bending, twisting, stooping and reaching; the same is true now. In 1980, he could only sit 20 minutes; Tsai reported the same limitation in 1983. In 1980, his pain was aggravated by standing 15 minutes or walking more than three blocks. Ascending and descending stairs was painful, as it is now. In 1980 he could only drive 20 miles; he testified that he now has back pain after driving 15 miles. In 1980, he could lift ten pounds; although he testified that he can now lift less than in 1980, he again said he could lift ten pounds. He testified that he has trouble sleeping now due to his pain, but admitted to a similar problem in 1980. He testified that he started using a cane in 1982, because his leg would give out; he said that the giving out is worse now than it was in 1980; but he also admitted that his leg never gave out on him in 1982, even though it was giving out on him about two times a month at the time of his 1980 hearing. He testified that he cannot mow his lawn or do housework now but admitted that he could not mow his lawn and was able to do very little housework in 1980. Finally, he testified that in 1980 he had to lie down and rest about two hours per day and that he presently rests about three and a half hours per day. However, his testimony at the 1980 hearing was that he then had to rest four hours a day. Essentially,

---

corrective relating to his upper back and neck pain.

"He has improved a great deal over the last several months, and we hope he will soon be medically stationary." (Emphasis supplied.)

claimant admitted that his average day in 1980 was pretty much the same as it is now.

After reviewing the record *de novo,* we conclude that, even if claimant's condition has changed, he has failed to prove that he is less able to work now than before the alleged aggravation.

Affirmed.