Argued and submitted December 16, 1985, reversed June 6, reconsideration denied August 1, petition for review denied August 26, 1986 (301 Or 666)

In the Matter of the Compensation of
Kenneth L. Roff, Claimant.

## GEORGIA-PACIFIC CORPORATION,
*Petitioner,*

*v.*

ROFF et al,
*Respondents.*

(WCB 83-03697; 83-07319; 83-11827; CA A35088)

721 P2d 468

George W. Goodman, McMinnville, argued the cause for petitioner. On the brief were Jerry K. Brown and Cummins, Cummins, Brown & Goodman, McMinnville.

J. Michael Starr, Eugene, waived appearance for respondent Kenneth L. Roff.

John E. Snarskis, Portland, argued the cause and filed the brief for respondent Industrial Indemnity Company.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, J.

WARDEN, J.

**WARDEN, J.**

Georgia-Pacific seeks judicial review of an order of the Worker's Compensation Board that affirmed the referee's opinion and order. The referee had concluded that claimant suffered a compensable aggravation of an injury to his back, assigned responsibility to Georgia-Pacific and awarded claimant attorney's fees of approximately $1700, to be paid by Georgia-Pacific. On *de novo* review, we find the evidence insufficient to support the conclusion of the referee and the Board that claimant suffered a worsening of his condition and therefore conclude that he does not have a compensable aggravation.

Claimant suffered compensable back injuries in April and July, 1977, while working for Georgia-Pacific. Dr. Rockey, claimant's treating orthopedic surgeon, described his condition a few months after the injuries as chronic low back strain with lumbosacral facet asymmetry. After claimant unsuccessfully attempted to return to work in December, 1977, Rockey ordered a lumbar myelogram. It showed no abnormality. Claimant continued to complain of low back pain and did not return to work. Rockey declared him medically stationary and recommended that he be limited to sedentary work. A July 7, 1978, determination order awarded time loss benefits and 35 degrees for unscheduled permanent partial disability. ORS 656.214(5).

Claimant returned to Rockey in April 1979 complaining of increased pain. Rockey was unable to find evidence of a new injury and concluded that the back problems were aggravated by obesity and lack of conditioning. He advised claimant to lose weight and discharged him from his care in May 1979. By stipulation and order dated July 11, 1979, claimant's unscheduled permanent partial disability award was increased to 88 degrees.

In September, 1979, claimant consulted Dr. Robertson, another orthopedic surgeon, who indicated that claimant's problem was more psychiatric than orthopedic and noted "a huge amount of functional overlay." In August, 1980, while working as a bartender at an Eagles Lodge, claimant hurt his back again, when he lifted two cases of empty beer bottles. He consulted Dr. Stainsby, a neurosurgeon, who diagnosed his condition as a sprain of the lumbar back and

recommended that he lose weight. Industrial Indemnity, the lodge's insurer, accepted the claim. It was closed by a December 8, 1980, determination order awarding time loss benefits only.

Claimant resumed working at the lodge as a card dealer but began to suffer new pains. Dr. Phifer diagnosed deQuervain's Disease and carpal tunnel syndrome. Industrial Indemnity accepted claimant's occupational disease claim for those conditions. In January, 1983, it referred claimant to the Callahan Center for a vocational assessment and rehabilitation program for his wrist and hand conditions. Dr. Storino examined him on his entry into the Callahan Center and found "a normal lumbar curve with good range of motion, no subjective complaints of pain and no low back tenderness." The Callahan Center placed him on a weight reduction program and prescribed daily one-mile walks for exercise. His back began to hurt. After three days, he left, because of intolerable back pain, which he attributed to the walks.

Claimant returned again to Rockey, who ordered a CT scan. It provided no evidence of the cause of pain. Rockey reported to Georgia-Pacific that claimant remained partly disabled but that his back condition had not deteriorated since May 15, 1979. Rockey did not recommend any further course of treatment.

On March 9, 1983, claimant began seeing Dr. Carlstrom, a chiropractor, for his back problems. Carlstrom wrote to Georgia-Pacific, relating the condition to the 1977 injuries, reporting that claimant considered his condition worse and authorizing time-loss payments. On April 15, 1983, Georgia-Pacific denied responsibility for claimant's back condition on the ground that his back problems were related to his 1980 injury, at the Eagles Lodge rather than to the 1977 injury at Georgia-Pacific. On July 28, 1983, Industrial Indemnity denied claimant's low back claim, contending that his condition had not worsened and that, if it had, the worsening was not related to the August, 1980, injury.

After the initial hearing in November, 1983, the referee issued an interim order finding that claimant had "suffered a worsening of his low back condition, beginning in early 1983." He based that finding primarily on the facts that

claimant had managed to get along without substantial treatment for his back after 1980 until the Callahan Center incident in 1983 and that, after that, he had required frequent chiropractic treatments. The referee left the record open for the purpose of deposing Dr. Raaf on the issue of responsibility. Raaf had examined claimant in September, 1983, and had found no objective evidence to substantiate his complaints. It was Raaf's opinion that he had experienced no actual worsening of his back condition in early 1983 and that his claims of increased pain were largely fabricated.

■    We conclude that claimant has not met his burden of proving that his condition worsened in 1983. *Van Horn v. Jerry Jerzel, Inc.,* 66 Or App 457, 674 P2d 617, *rev den* 297 Or 82 (1984). Three doctors provided opinions on the question. Rockey and Raaf both believed that there had been no worsening. Rockey was the only one of the three who had treated claimant both before and after the Callahan Center incident.

Only Carlstrom thought that claimant's condition worsened in 1983. However, he saw claimant for the first time only after the worsening supposedly took place and was never provided a complete history of claimant's problems. In his deposition, he admitted that he had not reviewed the medical reports relating to the closure of the 1980 claim and that he had not reviewed the records from claimant's stay at the Callahan Center.

■    We do not doubt that claimant suffered a flare-up of symptomatic pain while at the Callahan Center. We also recognize that he is not required to prove a worsening of his underlying condition, as opposed to his symptoms. *Consolidated Freightways v. Foushee,* 78 Or App 509, 717 P2d 633, *rev pending* (1986). He is, however, required to to prove that his flare-up of symptomatic pain rendered him more disabled than he was at the time of the last arrangement of compensation. ORS 656.273; *Consolidated Freightways v. Foushee, supra; Smith v. SAIF,* 78 Or App 443, 717 P2d 218 (1986). He has not done that. A person suffering from significant disability as a result of back injuries may experience occasional flare-ups of symptomatic pain, but that does not necessarily demonstrate increased permanent disability. Claimant has

not shown that his unscheduled permanent partial disability now exceeds the 88 degrees previously awarded.

      Reversed.