Timothy **EFFERTZ**, Appellant,

v.

**NORTH DAKOTA WORKERS'
COMPENSATION BUREAU,**
Appellee.

Civ. No. 910113.

Supreme Court of North Dakota.

Feb. 4, 1992.

Timothy Effertz, pro se.

Dean J. Haas, Asst. Atty. Gen., Bismarck, for appellant.

LEVINE, Justice.

Timothy Effertz appeals from a district court judgment affirming the Workers' Compensation Bureau's (the Bureau) decision denying him prejudgment interest for a delay in the payment of his award for permanent partial impairment[1] benefits. We affirm.

Timothy Effertz injured his spine in October of 1962 while employed by the Minot Rural Fire Association. He filed a claim with the Bureau and was determined to be permanently and totally disabled. His maximum medical recovery date was May 27, 1963. *See* NDCC § 65–01–02(10).[2] He qualified for permanent total disability benefits but was not paid benefits for permanent partial disability because, in 1963, the Bureau did not pay total disability benefits and permanent partial disability benefits simultaneously. It was not until 1974 that this "one-or-the-other" practice was changed when this court, reversing a Bureau order denying permanent partial disability benefits, held that the statutes which provide benefits for permanent total disability and permanent partial disability also allow concurrent payment of both kinds of benefits. *Buechler v. Workmen's Comp. Bureau*, 222 N.W.2d 858 (N.D. 1974). In 1963, the weekly benefit rate for permanent partial disability was $31.50.

In 1964, Effertz received a substantial third-party recovery and so the permanent total disability benefits he was receiving were suspended until the subrogation interest of the Bureau was satisfied in February of 1984. His permanent total disability benefits were then reinstated. In June of 1989, Effertz learned that permanent total disability benefits and permanent partial impairment benefits could be paid simultaneously. Effertz then filed claims for permanent partial impairment benefits. After Effertz underwent two medical assessments in 1989 and 1990, the Bureau awarded Effertz permanent partial impairment benefits under NDCC §§ 65–05–12 and 65–05–13 retroactively for the 1962 work-related injury.

Effertz' award was based upon an undisputed impairment rating of 1068.63 weeks for the permanent partial impairment of his right arm and shoulder, master hand, left arm and shoulder, whole body, and com-

---

1. In 1977, the designation "permanent partial disability" within NDCC §§ 65–05–12, 65–05–13 and 65–05–14 was changed to "permanent partial impairment." 1977 S.L., ch. 579, §§ 11, 12, 13. The reason for the change was to reflect a distinction between "'disability,' which relates only to inability to work, [and] 'impairment,' which relates to loss of [limbs or functions] or loss of use of limbs or functions." H. Indus., Bus., & Labor Comm. Min., testimony of Richard Gross, legal counsel to Workers' Compensation Bureau, Mar. 1, 1977, p. 6. The change from permanent partial "disability" to permanent partial "impairment" "only [changes] terminology." *Id.*

2. NDCC § 65–01–02(10) says:

   "'Date of maximum medical improvement' or 'date of maximum medical recovery' means the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated based upon reasonable medical probability."

plete loss of use of both legs. The award was calculated at the $105.00 weekly rate effective for all claims after July 18, 1989, in accordance with *Gregory v. Workmen's Comp. Bureau*, 369 N.W.2d 119 (N.D. 1985). Under *Gregory*, permanent partial impairment awards are to be based upon the statutory weekly rate in effect at the time permanent partial impairment is determined, rather than the rate in effect on the date of injury. *Id.* at 122. Effertz was paid $112,206.15 in two installments, the first in August of 1989 and the second in March of 1990.

Effertz requested interest on his delayed award. He contended that the Bureau had incorrectly denied him a permanent partial disability award in May of 1963, the date he reached maximum medical recovery. Therefore, he sought what he describes as the award's "time-value," which he defined as "interest on the claim less inflation," for the 27 years prior to its payment. The Bureau denied Effertz' request for interest, concluding that there was no legal or statutory authority to allow payment of prejudgment interest from the date of maximum medical recovery or from the date benefits were reinstated. Effertz appealed to the district court.

The district court, in its memorandum opinion, observed that there is no provision in North Dakota workers' compensation law for the payment of interest. The rate for permanent partial disability at the time Effertz was injured was $31.50 per week. The rate was subsequently increased to $40.00 in 1973; $60.00 in 1983; and finally, in July of 1989, to $105.00. *See* NDCC §§ 65–05–12 and 65–05–13. The district court reasoned that the legislature had already provided for the loss of "time-value" of money by the periodic increases in rates and, therefore, an award of interest retroactive to May of 1963 would be a duplication. The district court affirmed the order of the Bureau. This appeal followed.

On appeal, Effertz argues that the Bureau decision to award no interest is not in accordance with the law. He says that two statutes, NDCC § 65–05–25 and NDCC § 32–03–10, require the Bureau to pay interest on his permanent partial impairment award from 1963, the date of his maximum medical recovery, to the present. The Bureau's response is that there is no statutory authority to award interest on delayed workers' compensation benefits and that, in this case, interest would be a duplicate award.

■ On appeal, we review the decision of the Bureau, rather than that of the district court. *Lawson v. Workmen's Comp. Bureau*, 409 N.W.2d 344 (N.D.1987). However, the district court's analysis is entitled to respect if its reasoning is sound, *Domek v. N.D. State Personnel Bd.*, 430 N.W.2d 339 (N.D.1988), and we may look to its analysis for guidance in our review of the agency decision. *Bickler v. North Dakota State Highway Com'r*, 423 N.W.2d 146 (N.D.1988); *see also Perman v. Workers' Comp. Bureau*, 458 N.W.2d 484 (N.D. 1990).

■ Statutory construction is a question of law, fully reviewable by this court. *Gregory*, 369 N.W.2d at 121. The primary objective of statutory construction is to ascertain the intent of the legislature. *Hayden v. Workers' Comp. Bureau*, 447 N.W.2d 489 (N.D.1989). The legislative intent in enacting a statute must first be sought from the language of the statute itself. *Id.* at 496.

■ A statute must be construed so that an ordinary person reading it would get from it the usual, accepted meaning. *Schaefer v. Workers' Comp. Bureau*, 462 N.W.2d 179 (N.D.1990). The practical application of a statute by the agency enforcing it is entitled to some weight in construing the statute, especially where the agency interpretation does not contradict clear and unambiguous statutory language. *E.g., Smith v. Workers' Comp. Bureau*, 447 N.W.2d 250 (N.D.1989); *Peterson v. Heitkamp*, 442 N.W.2d 219 (N.D.1989); *see also Holtz v. Workers' Comp. Bureau*, 479 N.W.2d 469 (N.D.1992). These principles guide our analysis.

NDCC § 65–05–25, in June of 1989, when Effertz filed for permanent partial

impairment benefits, said in part:[3]

"The bureau, if it determines it is in the best interest of the claimant, may pay a lump sum equal to the *present value of all future payments* of compensation or a lump sum stipulated to by the claimant after an opportunity to seek legal counsel. The probability of the beneficiary's or claimant's death before the expiration of the period during which he is entitled to compensation shall be determined by reference to generally accepted mortality studies.... The bureau may also grant a partial lump sum settlement, based upon the same computations as the complete lump sum...." (Emphasis added).

█ Effertz contends that we should liberally construe the phrase "present value of all future payments" within NDCC § 65–05–25 to mean that he is entitled to the award's earned "time-value" which accrued as a result of inflation being greater than the legislature's "week rate" increases from $31.50 in 1962 to $105.00 in 1989. He argues that in order for him to receive the "present value" of his delayed award, NDCC § 65–05–25 requires that he must also be awarded interest to compensate him for the loss of the award's purchasing power caused by inflation during the "27–year" delay in payment. We are not persuaded.

We agree that the Workers' Compensation Act is to be liberally construed with the view of extending its benefit provisions to all who can fairly be brought within them. *Souris River Tel. v. Workers' Comp. Bureau,* 471 N.W.2d 465 (N.D. 1991). However, liberal construction does not mean we can ignore the terms or the intent of the provisions within the Act. *Id.* at 469. NDCC § 65–05–25 merely authorizes the Bureau to pay a lump sum settlement if it is in the best interest of the claimant, the sum to be calculated by using standard mortality tables for all future payments of benefits. *See generally Moore v. Workmen's Comp. Bureau,* 374 N.W.2d 71 (N.D.1985). But, we cannot dis-

cern any language within NDCC § 65–05–25 that authorizes the Bureau to pay interest on delayed benefits.

█ Instead, the ordinary meaning of the phrase "present value of future payments," within NDCC § 65–05–25 is the amount which, if presently received, could be invested in order to yield the sum of future benefits. *DuBois v. DuBois,* 335 N.W.2d 503 (Minn.1983). Thus, present value has nothing to do with past due benefits. Yet, the interpretation suggested by Effertz is that "present value of future payments" requires an award of interest on past due benefits from the date of his maximum medical recovery. Effertz' suggested construction is contrary to the common understanding of the meaning of the language and, therefore, not a reasonable or fair reading of the statute.

█ In *Ladish Malting Co. v. Stutsman County,* 416 N.W.2d 31 (N.D.1987), we stated:

"It is well settled, 'both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by act of the legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority.'" *Ladish,* 416 N.W.2d at 37, quoting *Ford Motor Co. v. State,* 65 N.D. 316, 258 N.W. 596, 606 (1935).

We have previously applied this principle to Title 65, our Workers' Compensation Act. *See Johnson v. Workers' Comp. Bureau,* 428 N.W.2d 514 (N.D.1988) [claimant was not entitled to interest on delayed payment of attorney's fees because no provision in Title 65 specifically authorized it]; *see generally United States, Etc. v. Workmen's Comp. Bureau,* 275 N.W.2d 618 (N.D.1979) [the Bureau cannot disburse its funds without statutory authorization]. Other jurisdictions similarly endorse the principle that the legislature must specifically authorize the payment of interest on delayed workers' compensation benefits. *Wrex v. T.G. & Y.,* 766 P.2d 1294 (Kan.App.

**3.** *NDCC § 65–05–25 was subsequently twice amended. 1989 S.L., ch. 766, § 7; 1991 S.L., ch.* 714, § 49.

1989); *Weaver v. State Indus. Ins. System,* 756 P.2d 1195 (Nev.1988); *Standard Fire Ins. Co. v. Morgan,* 745 S.W.2d 310 (Tex. 1987); *Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 703 P.2d 925 (App.1985); *Haret v. SAIF,* 72 Or.App. 668, 697 P.2d 201 (1985), *review denied* 299 Or. 313, 702 P.2d 1110 (1985); *Department of Labor & Employment Security, Division of Workers' Compensation v. Vaughan,* 411 So.2d 294 (Fla. App.1982); *Joseph E. Seagram & Sons, Inc. v. Willis,* 401 N.E.2d 87 (Ind.1980); *Latour v. Producers Dairy, Inc.,* 102 N.H. 5, 148 A.2d 655 (1959); *Gaffney v. Industrial Accident Board,* 133 Mont. 448, 324 P.2d 1063 (1958).

Because the language of NDCC § 65–05–25, given its usual, accepted meaning, does not authorize the payment of interest on past due benefits and because, absent specific legislative authorization, the State cannot be held to the payment of interest on its debts, we conclude that NDCC § 65–05–25 does not allow interest on Effertz' award.

█ Effertz also relies on NDCC § 32–03–10, a general statute outlining the damages for breach of contract. NDCC § 32–03–10 says:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

4. NDCC § 65–01–01 provides:

"The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workers injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of this state over such causes are abolished except as is otherwise provided in this title."

5. A few jurisdictions have applied general interest statutes to award interest on delayed workers' compensation benefits: *Tisdel v. Industrial Com'n of Ariz.,* 155 Ariz. 438, 747 P.2d 599 (Ariz.App.1987); *Campbell v. Walsh–Kaiser Co.,* 78 R.I. 290, 81 A.2d 684 (1951); *Land & Marine Rental Co. v. Rawls,* 686 P.2d 1187 (Alaska 1984); *Wilson v. Doehler–Jarvis Div. of National Lead Co.,* 358 Mich. 510, 100 N.W.2d 226 (1960). However, both *Tisdel* and *Campbell* allow interest only from the date of judgment ordering the payment of benefits and not from the date of injury. None of the four cases indicates any state precedent that its workers' compensation law is "comprehensive and exclusive." *Compare United States, Etc. v. Workmen's Comp. Bureau,* 275 N.W.2d 618, 622 (N.D.1979). Neither do they indicate whether the interest granted was on an award based upon the benefit rate in effect at the time of maximum medical recovery or an increased rate in effect at the time of payment of the delayed award.

Assuming, arguendo, that delayed benefits can be characterized as a breach of contract, *but see Effertz v. Workers' Comp. Bureau,* 481 N.W.2d 223 (N.D. 1992); *Labor & Employment Security,* 411 So.2d at 295, it is significant that NDCC § 32–03–10 is not part of Title 65, the Workers' Compensation Act. We have previously said that "the North Dakota work[ers'] compensation program is mandatory, comprehensive, and exclusive. All rights and obligations under the program are determined by Title 65, N.D.C.C." *United States, Etc.,* 275 N.W.2d at 622. Because the North Dakota Workers' Compensation Act is comprehensive, we do not look to other portions of the Century Code when defining rights and obligations pursuant to it or when construing its provisions. *See* NDCC § 65–01–01;[4] *accord Haret,* 697 P.2d at 204–05; *Seagram,* 401 N.E.2d at 93; *contra Land & Marine Rental Co. v. Rawls,* 686 P.2d 1187 (Alaska 1984); *Wilson v. Doehler–Jarvis Div. of National Lead Co.,* 358 Mich. 510, 100 N.W.2d 226 (1960); *Tisdel v. Industrial Com'n of Ariz.,* 155 Ariz. 438, 747 P.2d 599 (App. 1987); *Campbell v. Walsh–Kaiser Co.,* 78 R.I. 290, 81 A.2d 684 (1951). Therefore, we reject Effertz' attempt to incorporate NDCC § 32–03–10.[5]

█ In line with *Gregory,* 369 N.W.2d at 122, Effertz received a lump sum award based upon the $105.00 statutory rate in effect in 1989, rather than the $31.50 statutory rate in effect in 1963, the date of his maximum medical recovery. We agree

with the district court and the Bureau that, because Effertz received the benefit of the increased 1989 statutory rate, it would be duplicate compensation to base his award on that rate and also allow payment of interest retroactive to the date of his maximum medical recovery.

Effertz also, in essence, says that if the law does not allow for the payment of interest for delayed workers' compensation benefits, it is a violation of Article I of the North Dakota Constitution. However, "[o]ne who attacks a statute on constitutional grounds, defended as that statute is by a strong presumption of constitutionality, should bring up his heavy artillery or forego the attack entirely." *E.g., Froysland v. Workers' Comp. Bureau*, 432 N.W.2d 883, 892 (N.D.1988). Effertz' argument is conclusory, without citation or supportive reasoning, and not "heavy artillery." We, therefore, decline to address it.

Finally, Effertz claims summarily that he was denied due process, that the Bureau's conclusions of law were not supported by the facts, and that the findings of fact were not supported by a preponderance of evidence. However, issues need not be addressed by this court if they are not sufficiently briefed or argued. *Matter of Jawaski*, 446 N.W.2d 258 (N.D.1989). We decline to address these unsupported arguments.

Accordingly, we affirm the judgment of the district court affirming the decision of the Bureau.

ERICKSTAD, C.J., VANDE WALLE, J., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of Meschke, J., disqualified.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.