Submitted on record and briefs October 30, 1991, affirmed July 8, 1992

In the Matter of the Compensation of
Darold W. Miller, Claimant.

Darold W. MILLER,
*Petitioner,*

*v.*

WAGON TRAIL RANCH
and SAIF Corporation,
*Respondents.*

(WCB 89-05899; CA A67080)

834 P2d 460

Dan Steelhammer and Brothers, Drew & Steelhammer, Bend, filed the brief for petitioner.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Katherine H. Waldo, Assistant Attorney General, Salem, filed the brief for respondents.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant seeks review of an order of the Workers' Compensation Board that reversed the referee and concluded that claimant had not filed an aggravation claim within the statutory time period. We affirm.

The Board adopted the referee's findings of fact:

"Claimant is a 59 year old maintenance man who was removing a sprinkler head on September 29, 1983, when he heard his back pop and had an immediate onset of excruciating low back pain. The following day he began treating with Dr. Ries, a chiropractor, who diagnosed acute lumbar and cervical sprain with muscle spasms. Dr. Ries began conservative chiropractic treatment and released claimant to modified work with a 30-pound lifting restriction.

"On October 13, 1983, the insurer wrote to the claimant and notified him that his claim was being accepted and that his injury is classed as nondisabling. On October 26, 1983 Dr. Ries wrote to the insurer and reported that claimant was still having recurring pain for which he was continuing chiropractic treatment and that it was undetermined whether claimant would have any permanent impairment. On January 9, 1984, Dr. Ries again wrote to the insurer and advised that he was still treating claimant for continuing low back pain. Dr. Ries again wrote to the insurer on February 29, 1984 and opined that claimant was medically stationary, but he was still subject to flare-ups of his condition and that he would be treated on an as-needed basis.

"Claimant continued to have flare-ups and his condition did not improve, and so Dr. Ries referred him to Dr. Kendrick, a neurosurgeon. On November 20, 1984, Dr. Kendrick diagnosed an L5 root lesion and ordered a CT scan. A mild bilateral disc rupture at L5-S1 was indicated by the CT scan a few days later, and Dr. Kendrick opined that claimant was not medically stationary and prescribed a lumbosacral corset.

"Claimant continued to work for this employer without any time loss, but his low back pain gradually increased. On February 20, 1985, Dr. Ries reported to the insurer that claimant was having increasing difficulty in carrying out his job activities; Dr. Ries opined that claimant will have some degree of permanent disability, but that his conservative chiropractic treatment twice per month was enabling claimant to keep working.

"Claimant's low back condition continued to gradually deteriorate and in 1987 his wife began helping him with his work as a maintenance man because he could no longer handle some of the specific jobs. In the spring of 1988, claimant's low back condition dramatically worsened and he was no longer able to perform his job at all. On May 17, 1988, Dr. Ries reported that claimant had experienced a marked increase in back and leg pain and that he had increased his rate of treatment. On June 20, 1988, Dr. Ries reported to the insurer that claimant was still experiencing severe pain and receiving more frequent treatments.

"On December 13, 1988, Dr. Ries wrote to the insurer and reported that claimant's low back condition had steadily worsened to the point that he was no longer able to work. Dr. Ries recommended that claimant's claim be reopened for time loss effective immediately, or retroactive to May, 1988. Dr. Ries also reminded the insurer that claimant has a ruptured disc in his low back and he will now probably need surgery by Dr. Kendrick.

"On April 3, 1989, Dr. Ries opined that claimant's back condition worsened in May of 1988 and that he has been unable to work since that time. This claim has never been closed and the insurer has never paid claimant any time loss compensation."

The Board made these Findings of Ultimate Fact:

"Claimant did not initially lose time from work, receive temporary disability benefits or sustain permanent disability as a result of his low back injury.

"Claimant did not request reclassification of his injury from nondisabling to disabling within one year of injury.

"Claimant did not file his aggravation claim within five years of injury."

On those findings, the Board concluded that claimant's injury was not misclassified as nondisabling; that, because the claim was not reclassified as disabling within one year after the injury, claimant was required to pursue any aggravation claim that he might have had within five years after the date of injury; and, finally, that none of the various doctor's reports sent to SAIF during that five-year period constituted an aggravation claim.

■ Claimant's first assignment of error is that the Board applied an incorrect legal standard in reaching its conclusion

that claimant's injury was not disabling from the outset. The Board applied ORS 656.005(8)(b) and (c),[1] which were the correct legal standards for determining if an injury was disabling at the time of the injury. What claimant really appears to be arguing is that the Board erred in finding that the injury was not disabling from the outset. That finding is supported by substantial evidence.

Claimant's second and third assignments of error are both based on the erroneous assumption that claimant's aggravation rights are affected by SAIF's failure to close his claim properly. If an injury is properly classified as nondisabling, an aggravation claim must be filed within five years from the *date of injury.* ORS 656.262(12); ORS 656.273;[2] *Smith v. Ridgepine, Inc.,* 88 Or App 147, 744 P2d 586 (1987). Claimant's aggravation rights ran from the date of his nondisabling injury.

■  Claimant next assigns error to the Board's conclusion that none of the physician's reports filed within five years from the date of his injury constituted an aggravation claim. In *Krajacic v. Blazing Orchards,* 84 Or App 127, 733 P2d 113, *mod* 85 Or App 477, 737 P2d 617, *rem'd* 304 Or 436 (1987), *aff'd* 90 Or App 593, 752 P2d 1299, *rev den* 306 Or 155 (1988), the same issue was raised under the same statutory provisions. We explained:

> "The requirements for an aggravation claim are not rigorous. However, an indication of a changed condition must be made. *Haret v. SAIF,* [72 Or App 668, 672, 697 P2d 201, *rev den* 299 Or 313 (1985)]. ORS 656.273 provides, in part:

---

[1] ORS 656.005(8), now ORS 656.005(7)(c) and (d), provided, in part:

"(b) A 'disabling compensable injury' is an injury which entitles the worker to compensation for disability or death.

"(c) A 'nondisabling compensable injury' is any injury which requires medical services only."

[2] ORS 656.262(12), now ORS 656.277(2), provided, in pertinent part:

"A claim that a nondisabling injury has become disabling, if made more than one year after the date of injury, shall be made pursuant to ORS 656.273 as for a claim for aggravation."

ORS 656.273 provided, in part:

"(4)(b)  If the injury was nondisabling and no determination was made, the claim for aggravation must be filed within five years after the *date of injury.*" (Emphasis supplied.)

" '(1)   After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, *for worsened conditions resulting from the original injury*.

"  '* * * * *

" '(3)   A physician's report indicating a need for further medical services or additional compensation is a claim for aggravation.' (Emphasis supplied.)

"As we noted in *Haret*, the purpose of subsection (3) is to allow an aggravation claim to be made by a physician's report which requests additional services. However, 'additional services' must be read together with ORS 656.273(1). That provision makes clear that the additional medical services referred to are for 'worsened conditions.' While we agree with claimant that the report itself does not need to prove the worsened condition, it must put the insurer on notice that treatment for more than *continuing* conditions is indicated." 84 Or App at 130. (Emphasis in original.)

In this case, the Board concluded that the reports submitted by claimant's physicians within the five-year period after his injury did not put the insurer on notice that claimant's underlying condition had worsened. The reports all indicated that claimant was receiving palliative treatment for his original injury. It was not until December, 1988, after the five-year period had expired, that Ries submitted a report indicating that claimant's condition had worsened. That was too late.[3]

Affirmed.

---

[3] In the light of our decision that claimant's aggravation rights had expired before he submitted an aggravation claim, the last assignment of error relating to penalties and attorney fees for unreasonable resistance to payment of aggravation related compensation is moot.