Argued and submitted May 5, reversed and remanded September 10, 1986

In the Matter of the Compensation of
Robert L. Trump, Claimant.

HALLMARK FURNITURE,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(84-11082 & 84-11081; CA A37198)

724 P2d 932

Jas. Adams, Portland, argued the cause for petitioner. With him on the brief was Mitchell, Lang & Smith, Portland.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Wade P. Bettis, Jr., La Grande, waived appearance for respondent Trump.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This case requires the application of the last injury rule to determine which of two employers is responsible for a claim for medical services. The referee found that SAIF, the insurer for the last employer, was responsible. The Workers' Compensation Board reversed and assigned responsibility to Hallmark Furniture (Hallmark), the first employer. Hallmark petitions for review, and we reverse.

In April, 1969, claimant injured his back while working as a delivery man for Hallmark. His condition was diagnosed as a low back strain with symptoms radiating into the right leg. Following conservative treatment, the claim was closed. He was eventually awarded 15 percent unscheduled permanent partial disability. Between 1970 and 1975, he attended a business college, worked as a truck driver, performed part-time bookkeeping duties and worked for several construction companies. His symptoms continued, periodically necessitating a return for medical treatment.

In July, 1975, claimant reinjured his low back while working for SAIF's insured. Dr. Stephens, claimant's treating orthopedist, diagnosed a low back strain with underlying degenerative disc disease. Following his conservative treatment and vocational rehabilitation, the claim against SAIF was closed in March, 1978, and claimant was awarded 10 percent permanent partial disability. For approximately the next six years, he worked as a deputy sheriff and on his small farm. He continued to seek medical treatment when his back pain became intolerable. Those treatments occurred approximately once a year and consisted of pain medication and rest.

In March, 1984, while working on his farm, claimant experienced "very bad back pain." The pain was in the same area as before, but the tingling sensations in his right leg had become a pain radiating down the back of his leg. He returned to Stephens, who recommended surgery. In August, 1984, Stephens performed a laminectomy, a nerve root decompression and a fusion at L5-S1. Claimant filed a claim for medical services.[1] Hallmark denied the claim:

---

[1] Claimant also sought temporary and permanent disability compensation. The claim for compensation is not at issue here.

"Available evidence indicates you sustained an intervening injury on July 2, 1975 while * * * insured with State Accident Insurance Fund and suggest your claim be directed to their office."

SAIF denied the claim on the ground that claimant's current problems arose from the 1969, and not the 1975, injury. Claimant requested a hearing.

The referee found that SAIF, the insurer on the risk at the time of the most recent injury, was responsible for claimant's surgery. He relied on *Industrial Indemnity Co. v. Kearns,* 70 Or App 583, 690 P2d 1068 (1984), and concluded that SAIF had failed to prove that there was no causal connection between the worsening of claimant's back and his 1975 injury that resulted in permanent impairment. The Board agreed that *Kearns* controls but decided that SAIF had proved that there was no such causal connection.

We agree with the Board and the referee that *Kearns* controls this case. There, we approved this rule:

" 'Where there are multiple accepted injuries involving the same body part, we will assume that the last injury contributed independently to the condition now requiring further medical services or resulting in additional disability, and the employer/insurer on the risk at the time of the most recent injury has the burden of proving that some other accepted injury last contributed independently to the condition which presently gives rise to the claim for compensation; e.g., that its accepted injury caused only *symptoms* of the condition or involved a different condition affecting the same body part.' " 70 Or App at 585.

There is no direct medical evidence on whether there is a causal connection between the 1975 injury and the worsening of claimant's condition in 1984. The Board and the referee disagree over whether the lack of such a causal link can be inferred from Stephens' reports. On May 12, 1981, Stephens reported that

"x-rays taken [in 1969] show no signs of degenerative disc disease. There is partial lumbarization of S1. The disc level above this is normal. On subsequent films dating 1971, 1974, and 1976 begin to show degenerative changes with spur formation on both the superior and inferior end plates at the level above this lumbarized S1. In 1976 there is a small

anterior and posterior spur foundation about the superior and inferior end plates.

"It is my best medical judgment that this man's low back problems all resulted from his injury in 1969. I do not feel that his back problems are just normal degenerative changes."

On July 18, 1984, Stephens reported advanced degenerative changes at the L5-S1 level with significant spinal stenosis. He stated:

"I feel this man's present back condition is directly related to his injury of 1969. I previously have reviewed his x-rays from that time. He has had steadily advancing degenerative changes at the L5-S1 ever since the injury of 1969. The initial x-rays in 1969 did not show degenerative changes. Therefore, I feel that the damage in the L5-S1 level was done at the time of his injury in 1969 and he has had progressive degenerative changes from that time."

We agree with the referee that Stephens' statements are not sufficient, in themselves, to relieve SAIF from responsibility. Those reports discuss only the contribution of the 1969 injury. They do not address the possibility, likely on this record, that the 1969 and 1975 injuries *concurred* to cause the current disability.

SAIF suggests that we held in *Kearns* that the last injury rule requires proof that the later employment *actually* contributed to the disability and that it is not sufficient for claimant to show that the last injury *could have* contributed to claimant's disability. *See* 70 Or App at 587. Assuming that *Kearns* so held, that holding arguably is inconsistent with *Boise Cascade v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984). In any event, SAIF misses the point of the *Kearns* presumption of *actual* contribution by the last injury in cases involving multiple accepted injuries to the same body part. 70 Or App at 587. SAIF failed to rebut that presumption, and the Board erred in finding Hallmark responsible.

Reversed and remanded with instructions to reinstate the referee's order.