Argued and submitted May 5, reversed and remanded with instructions
October 29, 1986

In the Matter of the Compensation of
Roy W. Hammett, Claimant.

GOLDEN WEST HOMES,
*Petitioner,*

*v.*

HAMMETT et al,
*Respondents.*

(WCB 84-06239; 83-09271; CA A37646)

727 P2d 155

Jas. Adams, Portland, argued the cause for petitioner. With him on the brief was Mitchell, Lang & Smith, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Milo Pope, Mt. Vernon, filed the brief for respondent Roy W. Hammett.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Golden West Homes seeks review of a Workers' Compensation Board order holding it responsible for a worsening of claimant's back condition. The issue is which of two employers is responsible. We reverse and remand.

In 1966, claimant had low back surgery at L5/S1 to free the L5 nerve root. In March, 1979, he sustained a compensable injury to his low back in a lifting incident while employed at Golden West. In June, 1979, he had surgery to remove bone and scar tissue caused by the 1966 surgery. The claim was closed on April 1, 1980, with an award of 10 percent unscheduled permanent partial disability.

In August, 1979, claimant began working at Eastern Oregon State Hospital (EOSH), SAIF's insured. In August, 1980, he sustained another compensable injury to his low back when he was tackled from behind by a patient. He was off work for four days, responded to conservative care and returned to work. The claim was closed on October 1, 1980, with an award of time loss only.

In December, 1982,[1] claimant fell from a scaffold at EOSH. He notified his supervisor of the incident but lost no time from work, sought no medical care and did not file a claim. In June, 1983, increasing pain in his back and right leg began to interfere with his ability to do his job. He was hospitalized for conservative treatment and diagnostic procedures. Dr. Weeks thought that CT scan findings were equivocal. Dr. Gehling examined claimant and recommended EMG/NCV testing to define claimant's condition further. Dr. Isaacs reported that nerve conduction tests revealed sensory

---

[1] The Board stated that claimant fell from the scaffold in "December of 1981 *or* 1982, claimant cannot be sure which year * * *." (Emphasis supplied.) The referee stated that "[i]t appears the scaffolding incident occurred sometime in 1981 or 1982. There is some evidence it may have occurred in December." We do not understand their equivocation. Claimant testified:

"Q: What was the date of the scaffolding incident?

"A: Sir, I do not recall the date.

"Q: Is it approximately December 14, '82? Sound about right?

"A: It was somewheres in there. I do not — recall because at the time I did not think that it would present itself where I had to have the date."

We understand claimant to be uncertain of the *day*, not the *year*.

S/1 root radiculopathy. On July 19, 1983, Gehling stated that "there is likelihood that the majority of his CT findings are related to scar tissue."

On July 20, 1983, claimant went to an emergency room complaining of low back pain. On July 25, Gehling stated that the major contributing causes of claimant's then current condition were (1) the fall off the scaffolding in 1981 or 1982, and (2) scarring as a result of the 1966 and 1979 surgeries. He also stated:

> "In regards to the patient's 1980 work injury, I do not think that this relates significantly to his current complaints since the patient describes an injury a year later that precipitated the new onset of discomfort."

However, Gehling later stated:

> "As to [claimant's] back injury in 1980, I have no opinion as regards how this contributes to his present complaints since he stated this resolved, and I do not have any indications as to its severity, etc."

Both petitioner and SAIF denied responsibility for claimant's worsened condition.

The referee found that neither petitioner nor EOSH was responsible. The Board affirmed as to EOSH but held petitioner responsible. We do not discuss the Board's reasoning, because the Board (as well as the referee and the parties) made an assumption which caused it to miss the point here.

No one disputes that claimant's condition has worsened. The parties frame the issue as which employer, if any, is responsible for the worsened condition when it followed an on-the-job but unclaimed injury (the fall from the scaffold) which was preceded by two prior accepted injuries (the 1980 tackling incident and the 1979 lifting incident), all to the same body part. As a preliminary matter, we do not agree that the December, 1982, fall from the scaffold was an unclaimed injury. As we view the record, the "claim" giving rise to this appeal is the claim for that fall.

■   The "claim" here is a set of doctors' reports. On June 6, 1983, a doctor reported that claimant came "in with pain in his right leg. He is tender in his back and he has had 2 surgeries in his back. * * * He is started on Indomethacin 75 mg. of the SR and is to continue this for a period of time." On

June 16, Weeks saw claimant "for complaints referable to low back and right lower extremity. He knows of no recent injury, just rather gradual onset of pain in the low back and radiating discomfort into the right lower extremity * * *." On July 14, Gehling reported:

> "The patient states he developed back pain in 1980 after being tackled by a patient at the State Hospital. He states this resolved slowly. Again, approximately one year ago the patient fell when a scaffolding collapsed at work, injuring his back. Since that time his pain has been increasing in severity such that he has chronic low back discomfort with a radicular pain * * *.
>
> "* * * * *.
>
> "The patient had back surgery in 1966 and in 1979. * * *
>
> "Because of his annoying, tingling discomfort that quite likely is related to the S-1 distribution, I feel EMG/NCV's are appropriate to ensure there is no evidence of chronic neuropathy. I will obtain these EMG/NCV studies and have the patient return. We will discuss futher therapy at that time."

Those reports are plainly sufficient to constitute a claim for an aggravation within the meaning of ORS 656.273(3). *See Haret v. SAIF*, 72 Or App 668, 672, 697 P2d 201, *rev den* 299 Or 313 (1985).

■    For an accidental injury claim, ORS 656.265 provides:

> "(1)    Notice of an accident resulting in an injury or death shall be given immediately by the worker or a dependent of the worker to the employer, but not later than 30 days after the accident. * * *
>
> "(2)    The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred to a worker. * * *
>
> "* * * * *
>
> "(4)    Failure to give notice as required by this section bars a claim under ORS 656.001 to 656.794 unless:
>
> "(a)    The employer had knowledge of the injury or death, or the insurer or self-insured employer has not been prejudiced by failure to receive the notice * * *."

We conclude that claimant is excused from the written notice

requirement. First, EOSH had knowledge of the fall within the meaning of subsection (4)(a), because claimant reported the fall to his supervisor. *See Colvin v. Industrial Indemnity,* 301 Or 743, 725 P2d 356 (1986). Second, we fail to see how the insurer can argue that it was prejudiced by claimant's failure to file a. written claim. There is no dispute but that the fall occurred and that it occurred on the job, and SAIF knew of claimant's medical problems before August 8, 1983, when it denied the claim. We turn to the responsibility question.

■ The parties frame the responsibility issue as which employer is responsible for an aggravation. When this claim is treated as a claim for the fall from the scaffold, however, there is also a question whether claimant suffered an aggravation or a new injury. *See e.g., Hensel Phelps Const. v. Mirich,* 81 Or App 290, 724 P2d 919 (1986). SAIF is responsible in either event. If claimant suffered a new injury, SAIF is responsible, because it was on the risk when claimant fell from the scaffold. If claimant suffered an aggravation, SAIF is responsible under the rule of *Industrial Indemnity Co. v. Kearns,* 70 Or App 583, 690 P2d 1068 (1984):

> " 'Where there are multiple accepted injuries involving the same body part, we will assume that the last injury contributed independently to the condition now requiring further medical services or resulting in additional disability, and the employer/insurer on the risk at the time of the most recent injury has the burden of proving that some other accepted injury last contributed independently to the condition which presently gives rise to the claim for compensation; *e.g.,* that its accepted injury caused only symptoms of the condition or involved a different condition affecting the same body part.' "
> 70 Or App at 585. (Quoting the Board.)

In *Hallmark Furniture v. SAIF,* 81 Or App 316, 724 P2d 932 (1986), we held that SAIF had failed to rebut the *Kearns* presumption, because the evidence did not address the likely possibility that the injury at SAIF's insured *concurred* with a prior injury to cause the worsened condition. 81 Or App at 320. The evidence here likewise does not address the possibility that the 1980 injury concurred with the surgeries and the fall to cause the disability.[2] Thus, SAIF would be responsible if

---

[2] Although Gehling first stated that the 1980 injury did not contribute, we accept his later statement that he has no opinion on that issue.

claimant suffered an aggravation, because it failed to rebut the *Kearns* presumption. In either event, SAIF, as EOSH's insurer, not petitioner, is responsible.

Although SAIF is responsible either way, we must remand this case for a determination of whether claimant suffered an aggravation or a new injury, because the duration of claimant's future aggravation rights depends on that determination. *See* ORS 656.273(4).

Reversed and remanded with instructions to determine whether claimant suffered a new injury or an aggravation and to enter an order holding SAIF responsible.